UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


AMOS MONTGOMERY,

                    Petitioner,

v.                                    Case No. 3:07-cv-1014-J-34MCR

SECRETARY OF THE FLORIDA
DEPARTMENT OF CORRECTIONS,[1]
et al.,

                    Respondents.
_____

**ORDER**

**I. Status**

Petitioner Amos Montgomery, who is proceeding pro se and in forma pauperis, initiated this action by filing a Petition for Writ of Habeas Corpus (Petition) (Doc. #1) under 28 U.S.C. § 2254 on October 23, 2007, pursuant to the mailbox rule.  Petitioner challenges a 2001 state court (Duval County, Florida) judgment of conviction for dealing in stolen property, asserting that his defense counsel was ineffective because he:  (1) failed to object to the admission of the pawn shop slip; (2) conceded Petitioner's guilt without his consent; (3) failed to (a) elicit, on direct

_____

[1] The Secretary of the Florida Department of Corrections, having custody of Petitioner, is the proper Respondent.

examination, that Petitioner had prior felony convictions resulting from guilty pleas, (b) request a limiting jury instruction to cure the prosecutor's impeachment of Petitioner on cross-examination, and (c) rehabilitate Petitioner, on redirect examination, with the fact that his prior convictions were the result of guilty pleas; (4) failed to request a jury instruction on petit theft, as a lesser included offense of dealing in stolen property; (5) with respect to the erroneous admission of prejudicial characterizations, counsel (a) failed to object, failed to file a motion in limine, failed to file a motion for mistrial, and failed to preserve the issue for appellate review, and (b) utilized prejudicial characterizations; (6) failed to object, move for a mistrial, and preserve for appellate review the erroneous admission of testimony and improper questioning by the prosecutor; and (7) failed to preserve for appellate review the issue of the prosecutor's improper comments during opening and closing arguments. Additionally, Petitioner contends that the cumulative effect of counsel's errors in grounds one through seven combined to create constitutionally deficient and prejudicially ineffective assistance of counsel.

Respondents have submitted a memorandum in opposition to the Petition. See Respondents' Answer to Petition for Writ of Habeas Corpus (Response) (Doc. #32).[2]   On March 21, 2008, the Court

---

[2] The Court will refer to Respondents' exhibits as "Resp. Ex."

entered an Order to Show Cause and Notice to Petitioner (Doc. #11), admonishing Petitioner regarding his obligations and giving Petitioner a time frame in which to submit a reply.  Petitioner submitted a brief in reply on January 28, 2011.  See Petitioner's Amended Reply to Respondents' Response to § 2254 Petition (Reply) (Doc. #44).  This case is ripe for review.

## II. Procedural History

On May 2, 2001, Petitioner Montgomery was charged with armed burglary (count one); dealing in stolen property (count two); and burglary of a dwelling (count three).  Resp. Ex. A, Information. Defense counsel filed a motion to dismiss count one, see Resp. Ex. B, which the State opposed.  Resp. Exs. C; D.  The court denied the motion to dismiss on September 6, 2001.  Resp. Ex. E.

On September 14, 2001, Petitioner entered a plea of guilty to count three.  Resp. Ex. F.  Thereafter, Petitioner filed a motion to sever counts one and two for trial, Resp. Ex. G, and the court denied the motion on September 28, 2001.  Resp. Ex. H.  After jury selection, Petitioner proceeded to a jury trial on October 1, 2001. Resp. Ex. I, Transcript of the Jury Trial Proceedings (Tr.).  At the conclusion of the trial, a jury found Petitioner not guilty on the burglary charge (count one) and guilty, as charged in the Information, of dealing in stolen property (count two).  Resp. Ex. J, Verdicts.  The court denied Petitioner's motion for new trial. Resp. Exs. K; L; N at 229-30.  On October 23, 2001, the trial court

sentenced Petitioner, as a habitual felony offender, for both offenses (counts two and three) to concurrent terms of twenty-five years of incarceration.  Resp. Exs. M; N.

On appeal, Petitioner, through counsel, filed an Initial Brief, raising the following claims: (1) the trial court erred in denying his motions for judgment of acquittal; (2) the trial court committed fundamental error in instructing the jury that possession of recently stolen property gives rise to an inference that the Defendant knew the property was stolen because that instruction constitutes an unconstitutional mandatory rebuttable presumption; and (3) the trial court committed fundamental error in instructing the jury on the inference arising from unexplained possession of recently stolen property because the instruction constitutes an impermissible comment on the evidence; and (4) the trial court erred in denying his motion to preclude imposition of a habitual offender sentence. Resp. Ex. O.  The State filed an Answer Brief. Resp. Ex. P.  On October 28, 2002, the appellate court affirmed Petitioner's conviction and sentence per curiam without issuing a written opinion. Montgomery v. State, 831 So.2d 182 (Fla. 1st DCA 2002); Resp. Ex. Q.  The mandate issued on November 13, 2002. Resp. Ex. R.  Petitioner did not seek review in the United States Supreme Court.

On March 2, 2003, Petitioner filed his pro se motion to correct illegal sentence pursuant to Florida Rule of Criminal

Procedure 3.800(a), arguing that his habitual offender sentence is illegal because he did not have a qualifying predicate offense within five years of the commission of the instant offenses. Resp. Ex. S. The trial court denied the Rule 3.800 motion on October 21, 2003. Resp. Ex. T. On April 14, 2004, the appellate court affirmed Petitioner's sentence per curiam without issuing a written opinion. Montgomery v. State, 871 So.2d 881 (Fla. 1st DCA 2004); Resp. Ex. U. The mandate issued on May 11, 2004. Resp. Ex. V.

Petitioner filed a pro se petition for writ of mandamus in the appellate court on February 7, 2005. In his petition, Montgomery contended that he had filed a motion for post conviction relief pursuant to Florida Rule of Criminal Procedure 3.850 in the circuit court on June 3, 2004, and requested that the court issue a writ compelling the trial court to rule on that motion. Resp. Ex. W. In support of his petition, he attached a copy of his Rule 3.850 motion, which contains a certificate of service, dated June 3, 2004. Id., Appendix A. The appellate court, on February 23, 2005, issued an order directing the State to determine the status of the post conviction proceedings and file a status report. Resp. Ex. X.

On or about March 21, 2005, the State filed a status report, stating that it had contacted the clerk of the circuit court and ascertained that the circuit court had not taken any action on Petitioner's motion for post conviction relief because it had no record of the motion having been filed. Resp. Ex. Y. The State

5

attached to the status report a copy of the circuit court's docket sheet, reflecting that a Rule 3.850 motion had not been filed.  <u>Id</u>. On March 29, 2005, the appellate court entered an order directing Petitioner to show cause why the petition for writ of mandamus should not be denied in light of the fact that the circuit court's docket did not reflect the filing of the June 3, 2004 motion for post conviction relief.  Resp. Ex. Z.

Petitioner responded to the show cause order on April 7, 2005. In his response, Petitioner conceded that the petition for writ of mandamus must be denied if the trial court failed to receive the Rule 3.850 motion, but asserted that the denial of the petition for writ of mandamus should be without prejudice to his sending another copy of the Rule 3.850 motion to the trial court since the Rule 3.850 motion had been previously mailed to the trial court.  Resp. Ex. AA.   The appellate court denied the petition for writ of mandamus on April 15, 2005.  Resp. Ex. BB.

Petitioner, on May 11, 2006, wrote a letter to the circuit court, stating that he had filed a Rule 3.850 motion in that court on June 3, 2004.  Resp. Ex. CC.  In support of his contention, Petitioner attached a copy of his June 3, 2004 Rule 3.850 motion. <u>Id</u>.  In response to Petitioner's letter, the circuit judge entered a document, entitled "Acknowledgment of Receipt of Copy of Motion for Post-Conviction Relief," informing Petitioner that the court had never received any original of the Rule 3.850 motion, nor any

other motion filed by Petitioner pursuant to Rule 3.850, sworn by Petitioner under penalties of perjury through his original signature. Resp. Ex. DD.

On July 10, 2006, Petitioner filed a Rule 3.850 motion in the circuit court, raising eight ineffectiveness claims. Resp. Ex. EE. The circuit court denied the Rule 3.850 motion.  In doing so, the court acknowledged that the motion was filed on July 10, 2006, but that an earlier Rule 3.850 motion had been filed May 15, 2006, but was not signed under penalties of perjury.  Resp. Ex. FF.  Since Petitioner conceded that he "had accidentally forwarded an unsigned copy of the motion in May[,]" the court concluded that it would construe the Rule 3.850 motion as having been filed on May 15, 2006.  Id.  Nevertheless, still finding the Rule 3.850 motion to be untimely, the court stated in pertinent part:

> The Court has absolutely no record of having received a motion for post-conviction relief from the Defendant at any other time. The Defendant did file a motion to correct illegal sentence on March 6, 2003, and that motion was denied by an Order of October 21, 2003, herein.  It also appears that the Defendant did at some time during 2005 file a petition for writ of mandamus with the First District Court of Appeal, asking that court to issue a writ requiring this court to rule on a motion for post-conviction relief earlier filed herein.  Such resulted in a status report to the First District Court of Appeal, dated March 23, 2005, which informed the appellate court and the Defendant that there was no record herein of the filing of a motion for post-conviction relief. (Copy attached).

7

> The conviction of the Defendant herein
> became final on November 13, 2002, with the
> issuing of the District Court's [m]andate in
> connection with its affirmance of the
> conviction on direct appeal. (Copies
> attached). Accordingly, it appears that the
> motion now pending is untimely, pursuant to
> Fla. R. Crim. P. 3.850(b).

Id. Despite the ruling as to untimeliness, the court "[o]ut of an abundance of caution" addressed the merits of Petitioner's claims and summarily denied them without conducting an evidentiary hearing. Id. Petitioner filed a motion for rehearing, Resp. Ex. GG, which the trial court denied. Resp. Ex. HH.

Petitioner appealed, see Resp. Ex. II, but no briefs were filed. On May 7, 2007, the appellate court affirmed the denial per curiam. Montgomery v. State, 958 So.2d 926 (Fla. 1st DCA 2007); Resp. Ex. JJ. The court denied Petitioner's motion for rehearing. Resp. Ex. KK. The mandate was issued on July 11, 2007. Resp. Ex. LL.

### III. One-Year Limitations Period

The Petition is timely filed within the one-year period of limitations. See 28 U.S.C. § 2244(d); Petitioner's Reply to Respondents' Motion to Dismiss (Doc. #22), Exhibit A, Motion for Post Conviction Relief, filed June 3, 2004, pursuant to the mailbox rule; Respondents' Supplemental Response (Doc. #26) ("It would appear then that the postconviction motion was timely filed in state court on June 3, 2004, although never received by the trial court, and that said motion tolled the federal habeas limitations

period through the issuance of the mandate on July 11, 2007, and hence, that the instant federal habeas petition filed on October 23, 2007, is timely.").

## IV. Evidentiary Hearing

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Id. The pertinent facts of this case are fully developed in the record before the Court. Because this Court can "adequately assess [Petitioner's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004), an evidentiary hearing will not be conducted.

## V.  Standard of Review

The Court will analyze Petitioner's claims under 28 U.S.C. § 2254(d).  This standard is described as follows:

> As explained by the Supreme Court, the phrase "'clearly established Federal law' . . . refers to the holdings . . . of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412, 120

9

S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000).  We have held that to be "contrary to" clearly established federal law, the state court must either (1) apply a rule "that contradicts the governing law set forth by Supreme Court case law," or (2) reach a different result from the Supreme Court "when faced with materially indistinguishable facts." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2003).

As regards the "unreasonable application" prong of § 2254(d)(1), we have held as follows:

> A state court decision is an unreasonable application of clearly established law if the state court unreasonably extends or fails to extend a clearly established legal principle to a new context.  An application of federal law cannot be considered unreasonable merely because it is, in our judgment, incorrect or erroneous; a state court decision must also be unreasonable.  Questions of law and mixed questions of law and fact are reviewed de novo, as is the district court's conclusion regarding the reasonableness of the state court's application of federal law.

Jennings v. McDonough, 490 F.3d 1230, 1236 (11th Cir. 2007) (quotation marks and citations omitted).  In sum, "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409, 120 S.Ct. at 1521.  Finally, 28 U.S.C. § 2254(e)(1) commands that for a writ to issue because the state court made an "unreasonable determination of the facts," the petitioner must rebut "the presumption of correctness [of a state court's factual

findings] by clear and convincing evidence."[3]
28 U.S.C. § 2254(e)(1).

Ward v. Hall, 592 F.3d 1144, 1155-56 (11th Cir. 2010), cert. denied, 131 S.Ct. 647 (2010).

Finally, for a state court's resolution of a claim to be an adjudication on the merits, so that the state court's determination will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling. Harrington v. Richter, 131 S.Ct. 770, 785 (2011) (holding that section 2254(d) does not require a state court to give reasons before its decision can be deemed to have been adjudicated on the merits); Wright v. Sec'y for the Dep't of Corr., 278 F.3d 1245, 1255 (11th Cir. 2002), cert. denied, 538 U.S. 906 (2003). Thus, to the extent that Petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under § 2254(d).

## VI. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v.

---

[3] This presumption of correctness applies equally to factual determinations made by state trial and appellate courts." Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted) (citing Sumner v. Mata, 449 U.S. 539, 547 (1981)).

Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith,
539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S.
668, 687 (1984)).

> To establish deficient performance, a
> person challenging a conviction must show that
> "counsel's representation fell below an
> objective standard of reasonableness."
> [Strickland,] 466 U.S. at 688, 104 S.Ct. 2052.
> A court considering a claim of ineffective
> assistance must apply a "strong presumption"
> that counsel's representation was within the
> "wide range" of reasonable professional
> assistance. Id., at 689, 104 S.Ct. 2052. The
> challenger's burden is to show "that counsel
> made errors so serious that counsel was not
> functioning as the 'counsel' guaranteed the
> defendant by the Sixth Amendment." Id., at
> 687, 104 S.Ct. 2052.

> With respect to prejudice, a challenger
> must demonstrate "a reasonable probability
> that, but for counsel's unprofessional errors,
> the result of the proceeding would have been
> different. A reasonable probability is a
> probability sufficient to undermine confidence
> in the outcome."[4] Id., at 694, 104 S.Ct.
> 2052. It is not enough "to show that the
> errors had some conceivable effect on the
> outcome of the proceeding." Id., at 693, 104
> S.Ct. 2052. Counsel's errors must be "so
> serious as to deprive the defendant of a fair
> trial, a trial whose result is reliable."
> Id., at 687, 104 S.Ct. 2052.

---

[4] "[W]hen a defendant raises the unusual claim that trial
counsel, while efficacious in raising an issue, nonetheless failed
to preserve it for appeal, the appropriate prejudice inquiry asks
whether there is a reasonable likelihood of a more favorable
outcome on appeal had the claim been preserved." Davis v. Sec'y
for the Dep't of Corr., 341 F.3d 1310, 1316 (11th Cir. 2003) (per
curiam) (citation omitted).

Harrington, 131 S.Ct. at 787-88.  Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Ward, 592 F.3d at 1163 (citation omitted).  "Surmounting Strickland's high bar is never an easy task." Harrington, 131 S.Ct. at 788 (quoting Padilla v. Kentucky, 130 S.Ct. 1473, 1485 (2010)).

A state court's adjudication of an ineffectiveness claim is accorded great deference.  "The standards created by Strickland and § 2254(d) are both 'highly deferential,' [Strickland], at 689, 104 S.Ct. 2052; Lindh v. Murphy, 521 U.S. 320, 333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is 'doubly' so, Knowles[5], 556 U.S., at ----, 129 S.Ct. at 1420." Harrington, 131 S.Ct. at 788.

> The question "is not whether a federal court believes the state court's determination" under the Strickland standard "was incorrect but whether that determination was unreasonable - a substantially higher threshold." Schriro, supra, at 473, 127 S.Ct. 1933. And, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard. See Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").

---

[5] Knowles v. Mirzayance, 129 S.Ct. 1411 (2009).

Knowles v. Mirzayance, 129 S.Ct. 1411, 1420 (2009); see also
Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004) ("In
addition to the deference to counsel's performance mandated by
Strickland, the AEDPA adds another layer of deference--this one to
a state court's decision--when we are considering whether to grant
federal habeas relief from a state court's decision.").

## VII. Findings of Fact and Conclusions of Law

### A. Ground One

Petitioner claims that counsel was ineffective because he
failed to object to the admission of the pawn shop slip introduced
into evidence during the testimony of Shirley Hull, the manager of
the pawn shop where the victim's video cassette recorder (VCR) was
pawned.  Petitioner asserts that counsel should have objected to
the admission of the pawn shop slip on hearsay grounds since Hull
never testified that she was the custodian of the pawn shop's
records.  He argues that there was no legally sufficient predicate
established to warrant admission of the slip under the business
records exception to the hearsay rule, and that the admission of
the slip was patently prejudicial because a judgment of acquittal
would have been granted on the charge of dealing in stolen
property, but for the erroneous admission of that evidence.

As acknowledged by the parties, Petitioner raised this ground
in his Rule 3.850 motion.  Resp. Ex. EE.  The post conviction court
found that Petitioner's Rule 3.850 motion, filed on May 15, 2006,

14

was untimely since the motion was filed more than two years after the conviction had become final. Resp. Ex. FF at 31; Fla. R. Crim. P. 3.850(b).[6]  Nevertheless, given Petitioner's assertion that he had mailed the Rule 3.850 motion on June 3, 2004, the court, in an abundance of caution, addressed the merits of this claim.  After identifying the two-prong <u>Strickland</u> ineffectiveness test as the controlling law, the court denied the motion with respect to this claim, stating in pertinent part:

> First, Defendant asserts that his lawyer should have objected at trial to the admissibility of certain pawn slips, because of insufficient evidence that the person who brought them to trial was a records custodian. His objection stems from the fact that although the witness was the pawn shop manager [TR -86], she never testified that she was the custodian of the record.  However, Defendant fails to in fact assert that the manager was not a proper custodian of the records.  Thus, he fails to demonstrate how the outcome of his trial could have been different had his attorney made the objection he asserts.  <u>See</u>, <u>Strickland v. Washington</u>, 104 S.Ct. 2052 (1984).

Resp. Ex. FF at 31-32.  Upon Petitioner's appeal, the appellate court affirmed the denial per curiam.

---

[6]  Petitioner's judgment and sentence became final on Wednesday, November 13, 2002, when the appellate court issued its mandate on direct appeal.  <u>See</u> <u>Knowles v. State</u>, 41 So.3d 332, 333 (Fla. 1st DCA 2010) ("The two-year time period begins to run when appellate proceedings have concluded and the court issues a mandate, a fact clearly stated in the Rule.").  Therefore, the two-year time period in which to timely file a Rule 3.850 motion expired two years later on Monday, November 15, 2004.

Given the record in the instant action, the appellate court may have affirmed the denial of Petitioner's motion for post conviction relief on the merits.  If the appellate court addressed the merits, Petitioner would not be entitled to relief because the state courts' adjudications of this claim are entitled to deference under AEDPA.  After a thorough review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law.  Nor were the state court adjudications based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Thus, Petitioner is not entitled to relief on the basis of this claim.

Even assuming that the appellate court did not affirm the denial of the Rule 3.850 motion on the merits or that the state courts' adjudications of this claim are not entitled to deference under AEDPA, Petitioner's claim is still without merit.  In evaluating the performance prong of the Strickland ineffectiveness inquiry, there is a strong presumption in favor of competence.  The inquiry is "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. "[H]indsight is discounted by pegging adequacy to 'counsel's

perspective at the time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'" Rompilla v. Beard, 545 U.S. 374, 381 (2005) (citations omitted).   Thus, Petitioner must establish that no competent attorney would have taken the action that counsel, here, chose.   United States v. Freixas, 332 F.3d 1314, 1319-20 (11th Cir. 2003).

Trial counsel did not object to the admission of the pawn slip because there were no grounds for an objection.   In Florida, a pawn shop transaction form is admissible as an ordinary business record. Gonzalez v. State, 965 So.2d 273, 274 (Fla. 5th DCA 2007).   For a document to be properly admitted under the business record hearsay exception, it must have been created at or near the time of the event, by or from information transmitted by a person with knowledge, kept in the course of a regularly conducted business activity, and the regular practice of that business must be to make such a record. See Fla. Stat. § 90.803(6)(a).   These requirements must be shown by the testimony of the custodian or other qualified witness.   Id.

Ms. Hull, an employee and manager of the pawn shop, testified that when a customer pawns an item at her store, that customer is required to fill out a Florida transaction pawn slip, as a record of the transaction.   Tr. at 86.   Hull explained that the pawn slip is completed and the store employee makes the record at the time the item is pawned.   Id. at 87, 89.   She affirmed that the record

is made in the normal course of the pawn shop's business for each transaction, and that the pawn slip is a correct and accurate reflection of the transaction as it occurs.  Id.  Hull noted that each transaction form includes the customer's personal information taken from a State picture identification card or other picture identification card.  Id. at 87.  Additionally, prior to completing each transaction, Hull explained that the customer is required to place his thumb print and signature on the transaction form.  Id. According to Hull, the purpose of the pawn slip is "[t]o keep for our records and for official records and for ID purposes."  Id. at 88.

By her testimony, Hull demonstrated that each of the foundation requirements for admissibility of the pawn slip was present.  In Florida, it is not necessary to call the person who observed the matter recorded or who actually prepared the document. Mann v. State, 787 So.2d 130, 135 (Fla. 3rd DCA 2001) ("The record custodian or any qualified witness who has the requisite knowledge to testify as to how the record was made can lay the necessary foundation.") (citations omitted).  Thus, the State laid the proper predicate for introduction of the pawn slip as a business record under Florida Statutes, section 90.803(6).

Petitioner has failed to establish that counsel's performance was deficient for failing to object to the introduction of the pawn slip.  Even assuming arguendo deficient performance by defense

18

counsel, Petitioner has not shown prejudice.  Petitioner has not shown that a reasonable probability exists that the outcome of the case would have been different if counsel had objected.  Petitioner acknowledged that he pawned the VCR.  The issue for the jury was whether Petitioner knew or should have known that the VCR was stolen.  Therefore, Petitioner's ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice.

### B. Ground Two

Petitioner claims that counsel was ineffective because he conceded Petitioner's guilt without his consent.  He alleges that counsel conceded that the victim's house had been burglarized and that this concession also conceded that the VCR at issue was in fact stolen, which is an essential element of dealing in stolen properly, and as a result, the prosecutor argued in closing argument that it was uncontested that a burglary occurred.  As acknowledged by the parties, Petitioner raised this ground in his untimely Rule 3.850 motion.  Resp. Ex. EE.  As previously noted, despite its tardiness, the post conviction court addressed the merits of this claim.  After identifying the two-prong Strickland ineffectiveness test as the controlling law, the court denied the motion with respect to this claim, stating in pertinent part:

> Defendant claims that his counsel was ineffective because she ". . . conceded Defendant's guilt without the Defendant (sic) consent."  Actually, however, trial counsel

19

> simply conceded that a burglary and theft had
> occurred at the victim's apartment.   She
> argued, though, that there was no evidence
> that the Defendant had committed the same.
> [TR-32].   Since the evidence was unequivocal
> and unrefuted at trial that the victim's
> apartment had been burglarized, and goods were
> stolen therefrom, [TR-37 to 47] Defendant is
> now unable to demonstrate how the outcome of
> his trial was adversely affected by his
> attorney's actions.

Resp. Ex. FF at 32.  Upon Petitioner's appeal, the appellate court affirmed the denial per curiam.

The appellate court may have affirmed the denial of the post conviction motion on the merits.  If the appellate court addressed the merits, there are qualifying state court decisions.  Assuming so, this claim will be addressed applying the deferential standard for federal court review of state court adjudications.  Having reviewed the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

Moreover, even absent a decision entitled to deferential review under AEDPA, this Court finds this challenge to be without merit.  The trial court's conclusion is fully supported by the

record.   In the opening statement, defense counsel asserted that the prosecution would not be able to prove that Petitioner entered Samuel Jones' apartment on the day in question or that Petitioner dealt in any property that he knew or should have known was stolen from Jones.   Tr. at 30-33.   Defense counsel conceded that the evidence would show that Jones' apartment was burglarized on the day in question and that numerous items were stolen, including a VCR.   Id. at 30-32.   However, she stated that what the evidence would not show was that Petitioner stole anything from Jones' apartment.   Id. at 32.   Additionally, defense counsel conceded that the prosecution would present evidence of a pawn ticket filled out by Petitioner, on which he provided all of his information to pawn a VCR, but that there was no evidence that he pawned any of the other various items taken from Jones' apartment.   Id. at 32-33.

    At the trial, Petitioner testified that, on January 18th, he was approached by "a dude" carrying a VCR who walked up to him on the street and asked if he would like to make ten dollars by pawning the VCR.   Id. at 133.   Petitioner explained that the man told him the VCR was not stolen, but that he was unable to pawn it since he had lost his identification.   Id. at 133-34.   According to Petitioner, he agreed to pawn the VCR for the man, got into the man's car, and rode with him to Cash America Pawn.   Id. at 136. Petitioner then entered the pawn shop and supplied the required

information to pawn the VCR. Id. at 133. Petitioner testified he did not know that the VCR was stolen. Id. at 133-34.

In closing argument, defense counsel again acknowledged that Jones' apartment had been burglarized, but reiterated that there was no direct evidence that Petitioner was involved. Id. at 273-74. Counsel argued that the only evidence the prosecution had was circumstantial evidence in the form of a pawn slip from a pawn shop located across town from the burglary site. Counsel asserted that Petitioner had satisfactorily explained why he was in possession of the stolen VCR such that the inference to be made from "proof of possession of recently stolen property" was inapplicable. Id. at 312, 318.

In view of the record, defense counsel did not concede guilt to a charged offense or to a lesser offense. Notably, no viable basis existed to challenge Jones' testimony that his apartment was burglarized and his VCR was stolen. Jones identified the VCR recovered at the pawn shop, and the serial number recorded by Jones matched the serial number on the recovered VCR. As found by the post conviction court in denying this claim for relief, Petitioner has failed to establish that counsel's performance was deficient.

Even assuming arguendo deficient performance by defense counsel, Petitioner has not shown prejudice. Petitioner has not shown that a reasonable probability exists that the outcome of the case would have been different if his lawyer had given the

22

assistance that Petitioner has alleged she should have provided. Therefore, Petitioner's ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice.

## C. Ground Three

Petitioner claims that counsel was ineffective because he failed to (a) elicit, on direct examination, that Petitioner had prior felony convictions resulting from guilty pleas, (b) request a limiting jury instruction to cure the prosecutor's impeachment of Petitioner on cross-examination, and (c) rehabilitate Petitioner, on redirect examination, with the fact that his prior convictions were the result of guilty pleas.  As acknowledged by the parties, Petitioner raised this ground in his tardy Rule 3.850 motion. After identifying the Strickland ineffectiveness test, the court denied the motion with respect to this claim, stating in pertinent part:

> Defendant believes that his attorney was ineffective when he testified at trial, because she did not elicit evidence of his prior convictions on direct examination; but instead allowed the State to elicit the same on cross-examination.  Somehow, he believes, such led the jury to consider the Defendant's prior convictions as substantive evidence of guilt.  There is absolutely nothing in the record to support this contention.

Resp. Ex. FF at 32.  On Petitioner's appeal, the appellate court affirmed the denial per curiam.

Assuming the appellate court affirmed the denial on the merits, there are qualifying state court decisions. As such, this claim will be addressed applying the deferential standard for federal court review of state court adjudications required by AEDPA. After a thorough review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law. Nor were they based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, Petitioner is not entitled to relief on the basis of this claim.

Even assuming that the state courts' adjudications of this claim are not entitled to deference under AEDPA, Petitioner's claim is without merit. After the State rested, the judge asked Petitioner whether he wanted to testify. Tr. at 125-26. Defense counsel requested and was granted time to confer with Petitioner regarding Petitioner's decision to testify. Id. at 126. Following counsel's announcement that Petitioner wanted to testify, the judge explained to Petitioner that he had the right not to testify and that, if he chose to testify, he would be subject to cross-examination by the prosecutor, including questioning about the number of prior felony convictions and any crimes of dishonesty.

Id. at 126-28.  Petitioner affirmed that he understood.  Id. at 128.

On direct examination, defense counsel did not ask Petitioner about his prior felony convictions.  Id. at 132-34.  However, on cross-examination, the prosecutor asked Petitioner if he had ever been convicted of a felony, and Petitioner answered: "yes."  Id. at 140.  The prosecutor then asked:  "How many times?"  Id.  And, Petitioner responded: "Eight times."  Id.  The prosecutor did not ask any other questions relating to Petitioner's prior felony convictions. On re-direct, defense counsel did not ask Petitioner any questions relating to those prior felony convictions.  Id. at 151-55.

In closing argument, the prosecutor informed the jurors that, in judging Petitioner's credibility, they could consider the fact that he had been convicted of eight prior felonies.  Id. at 307. In response, defense counsel stated:

> Eight prior convictions.  Members of the jury, a fact you use to judge credibility, that's true.  That is one of the factors, but I would state to you whether Amos Montgomery was on Florida Avenue at the time he received this VCR has nothing to do with those eight prior convictions.  Those are convictions as such.  He's not here today because of his past convictions.  He's here today because of what the State has charged.  The State can't go back and make you believe that because of his past history that you should not believe him or hold [the State] to a lighter standard of proof because you can't.  You got to hold them to the highest, the one that's reserved for criminal proceedings, and that standard is

25

> none less than beyond and to the exclusion of
> a reasonable doubt.

Id. at 318-19.

On this record, the jury was properly informed that it could consider the number of prior convictions as a factor in judging Petitioner's credibility.  All the jury knew was that Petitioner had eight prior felony convictions.  Petitioner's assertion that this fact became admissible substantive evidence of guilt is without merit.  Petitioner has failed to establish that counsel's performance was deficient.  And, even assuming arguendo deficient performance by defense counsel, Petitioner has not shown prejudice. Accordingly, Petitioner's ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice.

## D. Ground Four

Petitioner claims that counsel was ineffective because he failed to request a jury instruction on petit theft, as a lesser included offense of dealing in stolen property, since the burglary victim testified that he purchased the VCR for $69.00.  As acknowledged by the parties, Petitioner raised this ground in his tardy Rule 3.850 motion.  Ultimately, the court denied the motion on the merits with respect to this claim, stating in pertinent part:

> Further, Defendant believes that his trial
> lawyer should have asked the Court for a jury
> instruction regarding petit theft as a lesser

26

> included offense of dealing in stolen
> property. However, petit theft is not a
> Category 1 lesser included offense of the
> crime in question. <u>See</u>, Fla. Std. Jury Instr.
> (Crim.) 14.2. Although it is a permissible
> lesser included offense, there was no evidence
> in the record to support such instruction.

Resp. Ex. FF at 32-33. Upon Petitioner's appeal, the appellate court affirmed the denial per curiam.

Assuming the appellate court affirmed the denial on the merits, there are qualifying state court decisions. Therefore, this claim will be addressed applying the deferential standard for federal court review of state court adjudications required by AEDPA. After a thorough review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law. Nor were they based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

Assuming that the state courts' adjudications of this claim are not entitled to deference under AEDPA, Petitioner's claim is, nevertheless, without merit. Petitioner has failed to establish that counsel's performance was deficient for failing to request a jury instruction on petit theft. <u>See</u> <u>Gardner v. State</u>, 987 So.2d 202, 203 (Fla. 4th DCA 2008) (stating the trial court did not err

27

in refusing to instruct the jury on lesser included offenses because the Information did not allege the elements of petit theft or grand theft nor was there any evidence introduced at trial that would support a conviction for those offenses); <u>Stafford v. State</u>, 956 So.2d 525, 526 (Fla. 4th DCA 2007) ("A jury instruction on a permissive lesser included offense is allowed where the elements of the lesser included offense are included in the charging document and some evidence of the lesser included offense is submitted at trial."), <u>cert</u>. <u>denied</u>, 552 U.S. 958 (2007).   Even assuming arguendo deficient performance by defense counsel, Petitioner has not shown prejudice.   Accordingly, Petitioner's ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice.

## **E. Ground Five**

Petitioner claims that counsel was ineffective because he (a) failed to object, failed to file a motion in limine, failed to file a motion for mistrial with respect to the erroneous admission of prejudicial characterizations, and failed to preserve that issue for appellate review, and (b) utilized prejudicial characterizations.   Petitioner alleges that the State and/or its witnesses repeatedly used improper characterizations, such as "victim," "crime lab," "crime scene technician," and "crime," and that defense counsel also used them.   <u>See</u> Petition at 12A-12C. Petitioner raised this ground in his Rule 3.850 motion, and the

28

court denied the motion with respect to this claim, stating in pertinent part:

> Defendant believes his attorney was ineffective for failing to prevent the State from using such terms as "victim", "crime lab", and "crime scene". However, it is absurd to suppose that the outcome of the trial under review would have been altered by the absence of such terms during the proceeding, even assuming they were improper.

Resp. Ex. FF at 33. Following an appeal by Montgomery, the appellate court affirmed the denial per curiam.

Assuming the appellate court affirmed the denial on the merits, there are qualifying state court decisions. Thus, the Court considers this claim in accordance with the deferential standard for federal court review of state court adjudications. After a thorough review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim. Moreover, even assuming the state courts' adjudications of this claim are not entitled to deference,

Petitioner's ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice.[7]

## F. Ground Six

Petitioner claims counsel was ineffective because he failed to object, move for a mistrial, and preserve for appellate review the issue of the admission of testimony[8] and improper questioning by the prosecutor during the cross-examination of Petitioner and the examination of rebuttal witness, Detective Bradley.  In support of his argument, Petitioner cites to the challenged portions of the record:  Tr. at 134, line 25; 135, lines 1-3, 16-17; 136, lines 6-24; 137, lines 1-2, 24-25; 138, line 1; and 260, line 13. Petitioner raised this ground in his belated Rule 3.850 motion, and the court denied the motion with respect to this claim, stating in pertinent part:

> Defendant asserts that he received ineffective representation by virtue of his attorney's failure to object to certain questions asked of him by the State on cross-examination.  However, the Defendant has failed to demonstrate how any of such questioning was improper.  In addition, this Court is unable to discern any impropriety in the same.

---

[7] As previously stated, with respect to an ineffectiveness claim that trial counsel failed to preserve the issue for appeal, the appropriate prejudice inquiry is whether "there is a reasonable likelihood of a more favorable outcome on appeal had the claim been preserved."  Davis, 341 F.3d at 1316.

[8] Petitioner asserts that the prosecutor's compound questions to him on cross-examination amounted to the prosecutor's testifying.  See Petition at 12D-12E.

Resp. Ex. FF at 33. The appellate court affirmed the trial court's denial per curiam.

Assuming the appellate court affirmed the denial on the merits, there are qualifying state court decisions. Thus, this claim will be addressed applying the deferential standard for federal court review of state court adjudications. Following an extensive review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this ineffectiveness claim.

Additionally, even assuming that the state courts' adjudications of this claim are not entitled to deference under AEDPA, Petitioner's claim is without merit. First, Petitioner complains that defense counsel was ineffective because he failed to object when the prosecutor questioned Petitioner on cross-examination about the person who gave him the VCR to pawn. On direct examination, Petitioner testified that, on January 18th, a dude walked up to him on the street and asked him if he wanted to make ten dollars by pawning the VCR. Tr. at 133. According to Petitioner, the man told him he had lost his identification and

31

therefore could not pawn it himself. *Id*. Petitioner testified that he did not believe the VCR had been stolen because the man had told him that it had not been stolen. *Id*. at 133-34.

On cross-examination, the prosecutor asked Petitioner whether he knew the man's name, and Petitioner responded that he did not. *Id*. at 134. Nevertheless, upon further cross-examination, Petitioner stated that he had seen the man in the neighborhood. *Id*. at 134-37. During that questioning by the prosecutor, defense counsel objected twice. *Id*. at 135, line 11; 137, lines 3-4. Petitioner asserts that the prosecutor created a "straw man" by use of terminology, such as "this guy who you don't know," "a guy you had never met before," an "unknown gentleman," and an "unknown guy," such that counsel should have objected to what amounted to testimony from the prosecutor. Additionally, he argues that counsel should have objected during the testimony of rebuttal witness Detective Bradley when the prosecutor characterized Petitioner's testimony as "a story." *Id*. at 260, line 13.

Like the post conviction court found in denying this Petitioner relief on this claim, this Court finds that Petitioner has failed to establish that counsel's performance was deficient since neither the prosecutor's conduct nor questioning was improper. Even assuming arguendo deficient performance by defense counsel, Petitioner has not shown prejudice. Accordingly,

Petitioner's ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice.[9]

## G. Ground Seven

Petitioner claims that counsel was ineffective because he failed to preserve for appellate review the issue of the prosecutor's improper comments during opening and closing arguments. Petitioner raised this ground in his belated Rule 3.850 motion, and the court denied the motion with respect to this claim, stating in pertinent part:

> Defendant claims his attorney should have objected to certain comments made by the State in closing and opening argument. However, the Court has closely examined the same, and determined them to have been proper. See, e.g., Parsonson v. State, 742 So.2d 858 (Fla. 2nd DCA 1999); Davis v. State, 698 So.2d 1182 (Fla. 1997), cert. den. 522 U.S. 1127 (1998).

Resp. Ex. FF at 33.  Upon Petitioner's appeal, the appellate court affirmed the denial per curiam.

Assuming the appellate court affirmed the denial of the post conviction motion as to his claim on the merits, there are qualifying state court decisions.  Therefore, the Court will address this claim in accordance with the deferential standard for federal court review of state court adjudications required by AEDPA.  After a thorough review of the record and the applicable

---

[9] See Davis, 341 F.3d at 1316 (stating the appropriate prejudice inquiry is whether "there is a reasonable likelihood of a more favorable outcome on appeal had the claim been preserved").

law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law.  Nor were those adjudications based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Thus, Petitioner is not entitled to relief on the basis of this claim.

Nevertheless, assuming that the state courts' adjudications of this claim are not entitled to deference under AEDPA, Petitioner's claim is without merit.  First, Petitioner asserts that the prosecutor invaded the exclusive fact-finding province of the jury and made an improper appeal to the jury for a conviction.  Petition at 12G (citing Tr. at 30, lines 3-10).  The prosecutor argued:

> Two hours after Mr. Jones left his house, this defendant was selling his stuff, and, ladies and gentlemen, you will hear the law at the conclusion of this case, and the law involves the law of burglary and the law of dealing in stolen property, with the other instructions, some of which you've heard, and once you hear the instructions as to the law in this case as to how this evidence that you will hear can be used to convict Mr. Montgomery, **once you review that law and the evidence that you hear in court here today, you're not going to have any doubt whatsoever, you will find Mr. Montgomery guilty of the burglary, you will find Mr. Montgomery guilty of the dealing in stolen property, because he's the man who pawned Mr. Jones' VCR within two hours after Mr. Jones left his house.**

34

Tr. at 29-30 (emphasis added).  The prosecutor neither invaded the fact-finding province of the jury nor improperly appealed to the jury to convict him.  Such comments were not improper, and therefore counsel's failing to preserve the issue for appellate review was not deficient performance.

Secondly, Petitioner argues that the prosecutor made Golden Rule arguments, by using the words "you," "you're," or "your." Petition at 12G (citing Tr. at 287, lines 11-20; 298, line 2; 303, lines 18-22; 304, lines 1-8).  A Golden Rule argument encompasses a request that the jurors place themselves in the victim's position, that they imagine the victim's pain and terror, or that they imagine that their relative was the victim.  See Pagan v. State, 830 So.2d 792, 812 (Fla. 2002), cert. denied, 539 U.S. 919 (2003).  The prosecutor, in the above-cited portions of the record, did not invite the jurors to place themselves in the victim's shoes or consider how they would feel if they were victims of the such crimes.  Since the comments were not improper, counsel's failure to preserve the issue for appellate review was not deficient performance.

Next, Petitioner asserts that the prosecutor ridiculed Petitioner's testimony by characterizing it as a "story."  Petition at 12G (citing Tr. at 297, lines 4-5, 15; 298, lines 24-25; 299, lines 7, 10, 11; 307, lines 2, 3, 21).  Additionally, Petitioner states that the prosecutor ridiculed his testimony again by

characterizing the unknown man who gave him the VCR to pawn as the "mystery man."  Petition at 12G-12H (citing Tr. at 296, lines 18-19; 305, lines 21, 23-24).  Upon review of the record, it appears that the prosecutor was asking the jurors to assess and judge Petitioner's credibility in light of the inconsistencies within his version of how the events transpired and to use their common sense in making a decision.  Because the comments were not improper, counsel's failure to preserve the issue for appellate review was not deficient performance.

Additionally, Petitioner alleges that, by characterizing evidence as "uncontroverted," the prosecutor shifted the burden of proof and/or denigrated the presumption of innocence by implying that the defense had a duty to introduce evidence.  Petition at 12H (citing Tr. at 286, line 7; 293, lines, 7, 14).  The prosecutor used the term "uncontroverted" as follows:

> [S]o when we look at the facts in this case, one thing that is uncontroverted is that Mr. Jones, Mr. Samuel Jones who came before you here this week, he was the victim of armed burglary.  His house was broken into and multiple items were taken, of which four of those items were guns and an additional item is this VCR right here (indicating).
>
>          . . . .
>
>      It is clear and uncontroverted, Mr. Samuel Jones left his apartment at approximately 1:30.  He testified that he had a doctor's appointment at some point in time around 2:00 o'clock.  So, at about 1:30 in the afternoon, he leaves his residence on Lane Avenue.

> Another uncontroverted fact in this case,
> which is beyond any dispute, is that at 3:35
> p.m., two hours and five minutes later, this
> defendant was selling Mr. Jones' VCR.

Tr. at 286, 293.  The defense did not dispute the fact that Jones'

apartment had been burglarized.  Nor did the defense contest the

fact that Petitioner sold Jones' stolen VCR that very same day.  As

such, it was not improper for the prosecutor to state that these

facts were uncontroverted.  The prosecutor's above-cited comments

did not imply that the defense had a duty to introduce any

evidence.  Since the comments were not improper, counsel's failing

to preserve the issue for appellate review was not deficient

performance.

Petitioner states that the prosecutor impermissibly called

Petitioner's version of the events a "lie" a total of five times,

that the trial judge sua sponte admonished the prosecutor and gave

a curative instruction, and that defense counsel waived the issue

for appellate review by failing to move for a mistrial.  Petition

at 12H (citing Tr. at 295, lines 21-25; 299, lines 14, 19).  The

record reflects that the trial judge sua sponte interrupted the

prosecutor and asked to see the attorneys for a side-bar

conference, Tr. at 299, lines 21-22, at which he admonished the

prosecutor, stating:

> Counsel, I brought you to the bench
> because I'm instructing you to quit using the
> word "Lies."  You can certainly use
> inconsistent testimony or anything along those

37

> lines but I don't want you to use the word
> lie.  Do you understand that?

Id. at 300.   At defense counsel's request, the trial judge

instructed the jury as follows:

> Ladies and gentleman of the jury, please
> pay attention to the following instruction
> that I give you.  Several times the prosecutor
> has used the word "Lie."  I'm going to
> instruct you to disregard that term, disregard
> that term.
>
> Again, remember what the attorneys say is
> not evidence or law.  Remember what the
> attorneys say is not evidence or law.
> However, do listen closely to their arguments.
> They're intended to aid you in understanding
> the case, but remember what the attorneys say
> is not evidence or law.

Id. at 300-01.   The prosecutor then continued his argument,

referring to Petitioner's differing versions of the events as

inconsistent, urging the jury to examine Petitioner's testimony

with "a critical ear."  Id. at 307.  Defense counsel then argued,

in rebuttal closing argument, that there were not two different

stories presented by the defense, but rather just one.  Id. at 317.

Furthermore, defense counsel reminded the jurors that they were the

triers of fact and it was their duty to determine what to believe

and not to believe.  Id. at 318.  Considering the record as a

whole, including the curative instruction given by the trial judge,

the Court finds that counsel's failure to move for a mistrial was

not deficient performance.

In addition, Petitioner asserts that the prosecutor attempted to curry the favor of the jury by stating three times "we have," which was calculated to improperly align himself with the jury. Petition at 12I (citing Tr. at 288, lines 18-19). Such comments were not improper. Therefore, counsel's alleged failure to preserve the issue for appellate review was not deficient performance.

Next, Petitioner states that the prosecutor misstated the law five times, by arguing that proof of possession of recently stolen property created a "presumption," instead of an "inference," of knowledge that the property was stolen. Petition at 12I (citing Tr. at 288, lines 19-25; 289, lines 2, 20). The record reflects that the trial judge sua sponte interrupted the prosecutor and called the attorneys to a side-bar conference. After defense counsel suggested how to phrase the curative instruction, the trial judge corrected the prosecutor's misstatement of the law by instructing the jury to disregard the prosecutor's remarks regarding the use of the word "presumption." Tr. at 289-92. Immediately following the curative instruction, the prosecutor apologized to the jurors for using the word "presumption," where the correct term is "inference," and then continued his closing argument. Id. at 292. The prosecutor did not use the word "presumption" again. After closing arguments, the trial judge properly instructed the jury with respect to use of the

"inference." <u>Id</u>. at 328.  Considering the record as a whole and in light of the trial judge's curative instruction to correct the misstatement and additional instructions after closing arguments, and just prior to deliberations, counsel's failure to preserve the issue for appellate review was not deficient performance.

Furthermore, Petitioner alleges that the prosecutor argued facts not in evidence, invading the exclusive fact-finding province of the jury and/or constituting unsworn testimony due to the prosecutor's failure to properly preface the comments.  Petition at 12I (citing Tr. at 296, lines 17-19; 297, lines 1-2; 298, line 6, 7).  In each of the instances identified by Petitioner, the prosecutor permissibly commented upon Petitioner's credibility and suggested why the jury should question his version of the events. Such comments were not improper, and therefore, counsel's failure to preserve the issue for appellate review was not deficient performance.

As an additional challenge, Petitioner states that the prosecutor misstated the law regarding the Florida standard jury instruction for weighing the evidence.  Petition at 12I (citing Tr. at 296, lines 1-8).  Since the prosecutor did not misstate the standard jury instructions on weighing the evidence, <u>see</u> Tr. at 330-31 (court's instructions), counsel's failure to preserve the issue for appellate review was not deficient performance.

Petitioner also points out several instances where he asserts the prosecutor invaded the fact-finding province of the jury by making factual assertions without accompanying his comments with the preface: "The evidence has shown . . . ." Petition at 12J (citing 297, lines 3-4; 298, lines 13-18, 24-25; 299, lines 7, 14-16; 301, lines 5-8; 304, lines 12-13; 305, line 20; 306, lines 1-2; 308, lines 3-4). Further, Petitioner asserts that the prosecutor made an improper appeal to the jury for a conviction. Petition at 12J (citing Tr. at 310, lines 3-5). Such comments were not improper, and therefore, counsel's failure to preserve the issue for appellate review was not deficient performance.

Attorneys are permitted wide latitude in their closing arguments, and the record reflects that the trial judge instructed the jury that the attorneys were not witnesses in the case, and therefore their statements and arguments were not evidence. Tr. at 14, 271, 292, 300-01; see Hammond v. Hall, 586 F.3d 1289, 1334 (11th Cir. 2009); Brown v. Jones, 255 F.3d 1273, 1280 (11th Cir. 2001) (citations omitted) (stating that "jurors are presumed to follow the court's instructions."), cert. denied, 534 U.S. 1085 (2002).

In those instances where the prosecutor inappropriately used the word "lie" and mistakenly used the word "presumption" instead of the word "inference," the trial judge immediately conducted a side-bar conference and gave a curative instruction. This Court

has thoroughly reviewed the record and is convinced that the above-cited comments did not result in a due process violation.[10] Petitioner's ineffectiveness claim is without merit since he has not shown deficient performance and resulting prejudice.[11]

### H. Ground Eight

Petitioner claims that the cumulative effect of counsel's errors in grounds one through seven combined to create constitutionally deficient and prejudicially ineffective assistance of counsel. Petitioner raised this ground in his tardy Rule 3.850 motion, and the court denied the motion with respect to this claim. Resp. Ex. FF at 34. Upon Petitioner's appeal, the appellate court affirmed the denial per curiam.

Assuming the appellate court affirmed the denial on the merits, there are qualifying state court decisions. Therefore, this claim will be addressed applying the deferential standard for federal court review of state court adjudications required by AEDPA. After a thorough review of the record and the applicable law, the Court concludes that the state courts' adjudications of

---

[10] The reversal of a conviction is warranted only when improper comments by a prosecutor have "'so infected the trial with unfairness as to make the resulting conviction [or sentence] a denial of due process.' Darden v. Wainwright, 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974))." Parker v. Head, 244 F.3d 831, 838 (11th Cir. 2001), cert. denied, 534 U.S. 1046 (2001).

[11] See Davis, 341 F.3d at 1316.

this claim were not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law.  They were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Thus, Petitioner is not entitled to relief on the basis of this claim.

Nevertheless, assuming that the state courts' adjudications of this claim are not entitled to deference under AEDPA, Petitioner's claim is without merit.

> As set forth above, [Petitioner] has not demonstrated error by trial counsel; thus, by definition, [Petitioner] has not demonstrated that cumulative error of counsel deprived him of a fair trial.  See Yohey v. Collins, 985 F.2d 222, 229 (5th Cir. 1993) (explaining that because certain errors were not of constitutional dimension and others were meritless, petitioner "has presented nothing to cumulate").

Miller v. Johnson, 200 F.3d 274, 286 n.6 (5th Cir.), cert. denied, 531 U.S. 849 (2000).  Petitioner is not entitled to relief on the basis of this cumulative error claim.

## VIII. Conclusion

Upon consideration of the foregoing, the undersigned finds that "[u]nder the doubly deferential judicial review that applies to a Strickland claim evaluated under the § 2254(d)(1) standard, see Yarborough v. Gentry, 540 U.S. 1, 5-6, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003) (per curiam), [Petitioner's] ineffective-assistance claim[s] fail[]."  Knowles v. Mirzayance, 129 S.Ct. at 1420.

43

Accordingly, for the above-stated reasons, the Petition will be denied, and this case will be dismissed with prejudice.

## IX. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If Petitioner seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional

44

right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1. The Petition (Doc. #1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2. The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3. If Petitioner appeals the denial of the Petition, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4. The Clerk of the Court shall close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this 15th day of March, 2011.

MARCIA MORALES HOWARD
United States District Judge

45

sc 3/15
c:
Amos Montgomery
Ass't Attorney General (Conley)